IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 12-00026-KD |
| | ) |
| JACK WITHERSPOON HINES, JR. | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on the Motion for Satisfaction of Restitution and Release of Garnishments and supporting documents filed by Defendant Jack Witherspoon Hines, Jr., the United States' response in opposition, Hines' reply, Hines' supplement to the Motion, the United States' supplementation after the hearing, and Hine's reply to the supplement (docs. 102, 105, 107, 112, 113, 114). A hearing was held on May 7, 2015. Defendant Hines, his counsel G. Douglas Jones, and Assistant United States Attorneys Alex Lankford IV and Erica Hilliard were present for the hearing.

Upon consideration of the motion, responses, replies and supplementation, the argument and evidence presented at the hearing, and for reasons set forth herein, Hines' motion is GRANTED. Accordingly, it is ORDERED that the restitution due to the Bank of Brewton is deemed satisfied, the Writs of Garnishment heretofore issued (docs. 44-46, 53-58, 77) are terminated, and the Garnishees are discharged and released from any further obligation.

Background

Hines was indicted for making a false statement to BankTrust in Brewton, Alabama (Count One) and making a false statement to the Bank of Brewton (Count Two) in connection with renewals of loans. Later, Hines waived indictment and pled guilty to an Information. He was convicted of making a false statement to the Bank of Brewton and was sentenced to

probation for three years.  As a special condition, Hines was ordered to make restitution to the Bank.  After a hearing to determine the amount of restitution, Hines was ordered to pay to the Bank the sum of $500,730.81 and to make minimum monthly payments of $500.00 toward satisfaction of the restitution.  He was given credit for payments received from an insurance company during the course of his probation.

Hines was not ordered to make payments through the Clerk of the Court.  However, Hines paid $500.00 per month to the Clerk, which was disbursed to the Bank.  The United States filed applications for post-judgment continuing Writs of Garnishment against nine companies.  The Writs were issued in early July 2014.

In mid-July, Hines filed a notice of change in economic status wherein he sought relief from the monthly restitution payments and a stay of the garnishments, the latter raised in his reply to the United States response.  The United States opposed the motion.  Another application for a Writ of Garnishment was filed and that Writ issued in late July 2014.  At this point, ten Writs had issued.

After briefing the question of Hines' change in economic status, the Court heard the parties' oral argument.  The Court found that Hines had shown a significant change in his financial condition. The Court stayed the enforcement of nine Writs of Garnishment, allowed the Writ of Garnishment as to Quantum Resources, LLC to remain in effect. The Court reduced Hines' monthly restitution payment to $0.00.[1]

Hines filed the instant motion for satisfaction of restitution and release of garnishments on basis that the restitution has been satisfied as part of the mediated settlement of two separate state court civil actions between Hines, his business entities, and the Bank that were filed in 2011 and 2013 (docs. 102, 102-1, 102-2).  The mediation occurred in February 2015.  In support of the

---

[1] The United States moved for relief from this Order, the motion was denied, and the United States filed an appeal.  However, the appeal was dismissed on the United States' motion.

motion, Hines provides a letter from counsel for the Bank to the Probation Officer assigned to this action, stating that the restitution has been "fully satisfied as of February 19, 2015 as part of a litigation settlement between the Bank and Mr. Hines" and that the "Bank therefore deems that Mr. Hines restitution obligations ordered in [this action] are satisfied and that no further collection efforts are necessary." (Doc. 102-1, Exhibit 1, Letter dated March 2, 2015).[2]  Hines also provides the declaration of a senior vice president of the Bank stating as follows:

> The purpose of this declaration is to confirm for the Court that as of February 19, 2015, all debts and obligations of Jackson W. Hines and Hines Realty, Inc. to the Bank of Brewton have been satisfied as part of the a litigation settlement between the Bank and Mr. Hines.  The Bank thus deems his restitution obligation ordered in this case also satisfied and that no further collection efforts are necessary.

(Doc. 102-2, Exhibit 2)

Hines supplemented his motion with a copy of the Memorandum of Settlement at Mediation[3] (doc. 112-1, Exhibit 3) and a copy of the Settlement Agreement (doc. 112-2, p. 2, Exhibit 4).  The Settlement Agreement provides a brief statement of the facts underlying the state court actions. Hines and Hines Realty Company, Inc. were indebted to the Bank in the total amount of $1.5 million on three mortgages for four parcels of real property. Hines and Hines Realty defaulted on these debts and the Bank foreclosed.  However, the attorney representing the Bank improperly bid $1.5 million at the foreclosure of each property for a total of $4.5 million, instead of bidding the separate mortgage balance or appraised value for each foreclosed parcel. In the lawsuits, Hines and Hines Realty claimed wrongful foreclosure, asserted that the

---

[2] The letter indicates that a copy of the letter and declaration were sent to the United States Attorney.

[3] The Memorandum is styled *Bank of Brewton v. Jack W. Hines, Jr. and Hines Construction Company*, Civil Action No. 11-900024 and *Hines Realty Company, Inc. v. Bank of Brewton*, Civil Action No. 13-900124, both in the Circuit Court of Escambia County, Alabama.

foreclosures had extinguished the debts, sought money damages relating to the excessive bid with return of the foreclosed real property, and cancellation of Hines' restitution.

In the Settlement Agreement, the Bank acknowledged that its attorney's actions "in conducting the foreclosures and bidding the total unpaid balance" of the debt "on each of the foreclosures was carried out by mistake and negligently; that the fault leading to the present action lies with" the Bank's attorney. (Id.) According to the terms of the settlement and the orders of the Circuit Court confirming title to the real property, Hines and Hines Realty's debts were extinguished, Hines received title to a warehouse with rental income,[4] $20,000 as an attorney's fee, any restitution payments received by the Bank after February 19, 2015,[5] and satisfaction of the remaining restitution of approximately $475,000.00. (Id.; Doc. 112-1, p. 2, Memorandum of Settlement at Mediation, Exhibit 3; Doc. 112-5, Orders vesting title, Exhibit 7) The Bank received title to "15 acres of lake property and the apartments". (Id.) The parties also agreed that

> The restitution ordered in the criminal case of *United States of America v. Jack Witherspoon Hines,* CR-12-00026-KD, Southern District of Alabama, and payable to the Bank of Brewton, is deemed by the Bank to be satisfied and no further collection efforts by the United States are necessary. Should the Bank receive any restitution payments from any source after February 19, 2015, the date of the settlement, said payments shall be immediately forward to Hines.

(Id., p. 2).

At oral argument, Hines stated that value of the settlement was over $700,000. Counsel explained that Hines' debts were extinguished, the warehouse was valued at $200,000, and $500,000 was applied to the restitution due to the Bank.

---

[4] The amount of income was not specified. However, the Memorandum addressed rental proceeds being held in escrow until the Settlement Agreement was executed (doc. 112-1, p. 2).

[5] Hines provided a copy of a check showing payment of $2,392.83 from the Bank, which was identified as restitution (doc. 112-3, Exhibit 5).

Analysis

The United States raises three arguments in opposition to Hines' motion. The United States argues that Hines is actually seeking an alteration or amendment to the restitution order to absolve him from paying the mandatory restitution, but the Court lacks jurisdiction or authority to alter or amend its prior order. The United States argues that private parties, such as the Bank and Hines, have not authority to alter criminal restitution orders through private settlement agreements. The United States argues that the public policy behind restitution orders is to promote deterrence and to protect victims from coercions from criminal defendants who negotiate extrajudicial, private agreements with their victims to evade restitution payments.[6]

Addressing these arguments in order, the Court finds no merit to the argument that Hines is actually seeking an alteration or amendment to the restitution order. The United States appears to base this argument on the existence of an unpaid balance in the Clerk's records – "Inasmuch as Defendant does not seek correction of formal or clerical errors, his motion seeking 'satisfaction' of his criminal judgment of restitution, despite maintaining an unpaid balance of over $476.000, is actually a motion to alter or amend his criminal judgment, which this court lacks jurisdiction to do so under the rules of criminal procedure." (Doc. 105, p. 5) The United States misses the mark. Hines was not ordered to pay restitution to the Clerk. He was ordered to pay restitution to the Bank. Also, Hines makes clear that he is seeking satisfaction of the restitution because he has paid the Bank in full, albeit in the form of a set-off or discharge in the civil litigation. As Hines argued at the hearing, he could have obtained a money settlement for $476,000 from the Bank, paid that money into the Court, which the Clerk would then disburse to

---

[6] The United States also argues that if the Bank of Brewton declines to receive its restitution payments, this Court may assign the restitution to the Crime Victims Fund (doc. 105, p. 13-15) The United States bases this argument on a section of the Settlement Agreement wherein the Bank agrees to send any future restitution payments to Hines. Because the Court finds that Hines has fully satisfied the restitution due to Bank of Brewton, the Court declines to address this argument.

the Bank, leaving a zero balance and restitution paid in full. But instead, the Bank agreed to deem his restitution satisfied. There is simply no evidence that Hines is seeking to alter or amend his criminal judgment.

The United States also argues that private parties, such as the Bank and Hines, have no authority to alter judgments awarding restitution under the Mandatory Victims Restitution Act. The United States argues that circuit precedent prohibits "post-judgment private settlements negotiated between defendants and their victims, such as the settlement at issue, from 'wip[ing] out restitution orders that are entered as part of the penalty in a criminal case.'" (Doc. 105, p. 6) The United States argues that Hines was aware of his obligation "when he engaged in the settlement negotiations with his victim to 'satisfy' his obligations without remitting his outstanding balance of over $476,000" and therefore, he remains obligated to pay the full amount. (Id., p. 7) [7]

The United States relies upon the decision in *United States v. Maestrelli*, 156 Fed. Appx. 144, 146 (11th Cir. 2005). In *Maestrelli,* the victim's assignee agreed that the restitution obligation of $674,781.00 would be discharged in return for a payment of $8,000.00. *Maestrelli* moved pursuant to 18 U.S.C. § 3664(k) for a modification to zero based on a change in his economic circumstances. The circuit court disagreed and held that private settlements did not constitute a change in economic circumstances, that such changes affected a defendant's ability to pay and not the obligation to pay, and affirmed the district court's decision that it could not discharge Maestrelli's obligation and its credit of the $8,000.00 payment against Maestrelli's restitution. The circuit court also stated that

---

[7] The United States also argues that Hines cannot meet the requirements for a modification of his payment schedule or release of the garnishment under 18 U.S.C. § 3664(k) because he does not assert a change in his *ability* to pay but instead only a change in his *obligation* to pay. (Doc. 105, p. 7-10) (italics in original). The United States argues that while § 3664(k) allows the Court to modify a payment schedule, the statute does not allow a modification of the restitution award; therefore, the Court cannot extinguish Hines' obligation to pay the full balance.

> Therefore, even if settlements entered into after restitution has been imposed could be considered by the district court under 18 U.S.C. § 3664(k), the court would be permitted only to credit the defendant's restitution order in the amount that had been paid in the settlement; it would not be authorized to discharge the restitution obligation completely, which is what Maestrelli sought.

156 Fed. Appx. at 146.

But Hines did not move pursuant to § 3664(k) to amend his restitution. Instead, he moves for satisfaction of the restitution on basis of the settlement agreement. Although Hines was sentenced to probation,[8] and therefore, was not incarcerated in the literal sense,[9] his circumstance appears better analyzed under 18 U.S.C. § 3664(n) which sets forth as follows:

> (n) If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n).

Arguably, the settlement of the state court litigation between Hines and the Bank falls within the terms of this statute. *See United States v. Roush*, 452 F.Supp.2d 676, 679 (N.D.Tex.2006) (stating that 18 U.S.C. § 3664(n) is triggered by a "windfall"); *United States v. Gardner,* 434 Fed. Appx. 250, 253 (4th Cir. 2011) (affirming the district court's decision that a personal injury settlement due to Gardner should be applied to the restitution due); *United States v. Yalincak,* 2008 WL 3833713, *1 (D. Conn. Aug. 14, 2008) ("To satisfy the lien [arising from

---

[8] Hines was sentenced to three years probation. The sentence was imposed on July 26, 2012. (Doc. 26)

[9] *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 591 (U.S. 2001) ("Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. Probation is one point ... on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." (citations and internal quotations omitted).

the order of restitution], . . . the Government can collect property already held by the Defendants and also any additional 'substantial resources' he receives, 'including inheritance, settlement or other judgment.' 18 U.S.C. § 3664(n).  Consequently, Defendant's principal contention - that the Government cannot levy any of the litigation recoveries or settlements which he receives during or following incarceration – is contrary to law.")  Hines received "substantial resources" from the litigation "settlement".  Consequently, Hines was required by statute "to apply the value of such resources to any restitution … still owed." Id.  That is what happened when the parties negotiated and mediated a Settlement Agreement whereby the Bank would set off the amount due on the restitution against any settlement due to Hines.

     Relevant now is the United States' next argument, that the policy behind mandatory restitution - that it is penal not compensatory and meant to have a deterrent and rehabilitative effect – as well as Supreme Court and other case law, precludes private settlements that compromise the restitution due to a victim.   The United States asserts that private settlements have the potential for further victimization and "even in the context of two sophisticated parties, such as the parties at issue, a victimized financial institution may feel undue pressure to settle with a defendant solely to maintain positive relationships in the community, protect their reputation, or minimize the financial burden of defending a civil lawsuit (regardless of the merits of the lawsuit), all of which further victimizes the institution." (Doc. 105, p. 12).

     In other words, the United States appears to base this argument on its belief that Hines has again victimized the Bank because there has been a negotiated and mediated settlement of the state court actions.  If that were true, then the value of the settlement Hines received from the Bank might call into question whether the restitution should be deemed satisfied.  But, the United States makes no solid argument on this point, instead conceding that "[t]he time and effort needed to separate valid, arms-length agreements from those extracted by other means,

could be a difficult task." (Id.) However, that is what the Court is called upon to do because the Bank's deeming satisfaction of the restitution based upon the settlement requires a determination as to the validity, or "arms-length", of the negotiation and mediation as opposed to the "undue pressure" the Bank "may feel" to settle with Hines to "minimize the financial burden of defending a civil lawsuit." Id.

At best, the United States argues that Hines has failed to present any independent evidence of valuation of Hines' claims against the Bank or any independent property appraisal, but instead relies solely on the Settlement Agreement. (Doc. 113, p. 5)  However, Hines did not rely solely on the Settlement Agreement.  He also provides the Court with the Memorandum of Settlement at Mediation (doc. 112-1, Exhibit 3), the letter from the Bank mailed to Hines' Probation Officer and signed by the Bank's counsel (Doc. 102-1, Exhibit 1), the declaration of a senior vice president of the Bank (Doc. 102-2), and the letter from the Bank's counsel to the United States Attorney asking the United States to reverse its position to oppose the motion for satisfaction.  (Doc. 112-1, Exhibit 6) [10]   The Bank explained as follows:

> The litigation that was resolved between my client and Mr. Hines has been ongoing for over two years.  The settlement that was reached, a copy of which was furnished to [the Assistant United States Attorney], was done so after serious deliberation with my client and with the help of a court ordered mediator.  The settlement of Mr. Hines' debts to the Bank, including his restitution obligation, was only a part of the settlement.  The overall value of the settlement to Mr. Hines was greater than the balance of the restitution obligation.  My firm has

---

[10]  At oral argument the United States pointed out that initially the Bank was in contact with the United States and aggressively pursuing collection of the restitution, even while the civil litigation was in progress.  This contact resulted in the issuance of the Writs of Garnishment. But then, the Bank recently changed its approach and advised the United States that it was through with pursuing the restitution.  The United States referenced the letter from the Bank to the United States Attorney stating that the settlement had been reached, the Bank deemed the restitution satisfied, and asking the United States to reverse its position to oppose Hines' motion for satisfaction.  (Doc. 112-1, Exhibit 6)  Apparently, the United States interprets this change of position, after the civil litigation was negotiated and mediated with a court appointed mediator, signals further victimization of the Bank by Hines.

represented the Bank for many years and we believe the settlement to be in the Bank's best interest.

(Id., p. 1)

The undisputed evidence shows that Hines and the Bank were both represented by counsel at the mediation and during the state court litigation. The action was mediated before a court ordered mediator. The circuit court entered two orders that confirmed the transfers of title to the real properties. The United States presents no evidence that the attorneys representing the Bank were incompetent, that the mediator was biased or that there was some inherent defect in the mediation process, or that the state circuit court judge lacked authority or jurisdiction to enter the orders.

Moreover, the United States argues that Hines failed to present sufficient evidence of the value of the settlement of Hines' claims against the Bank. However, the United States also presents no evidence that the value of real properties or the value of Hines' potential recovery against the Bank for the wrongful foreclosure, *i.e.,* the value of the litigation, was such that the Bank's deeming the restitution satisfied as part of the settlement was the result of further victimization of the Bank.

In this circumstance, the Court finds that the interests of justice place the burden upon Hines to show by a preponderance of the evidence that he has satisfied his restitution obligation. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. . . . *The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires*.") (italics added). Upon consideration of the evidence, primarily the Settlement Agreement and the Memorandum of Settlement at Mediation, the parties' oral argument, and the absence of any evidence from the United States that the value of settlement,

and consequently the validity of the set-off of the restitution against the settlement, was less than what was represented in the settlement documents, the Court finds that Hines has met his burden, his motion is granted, and his restitution is deemed satisfied.

DONE and ORDERED this the 1st day of June 2015.

>s/ Kristi K. DuBose
>KRISTI K. DuBOSE
>UNITED STATES DISTRICT JUDGE